IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AVNET, INC., )  | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:09-cv-237-WHA |
| ) | (wo) |
| VALIDATA COMPUTER & RESEARCH ) | |
| CORP., et al., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by Plaintiff Avnet, Inc. ("Avnet") (Doc. #39).

Avnet filed the Complaint in this case on March 24, 2009, bringing claims against Validata Computer & Research Corp. ("Validata") and Warren C. Philips ("Philips") for breach of a Promissory Note (Count I); (2) breach of the terms of invoices (Count II); (3) breach of the terms of a personal Guaranty signed by Philips (Count III). Validata and Philips filed an Answer and an Amended Answer and Counterclaim. The counterclaims are for breach of contact (Counts I, II) and breach of the duty of fair dealing and good faith (Count III).

Avnet moves for summary judgment as to all three of its claims and the counterclaims asserted against it.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

Validata is a reseller of electronic goods and, in particular, resells hand-held computers. Intermec Technology Corporation ("Intermec") manufactures the hand-held computers, and Validata integrates the Intermec products into its own line of mobile computing systems. Philips is the president of Validata.

In 2004, Intermec informed Validata that Intermec had decided to shift the distribution of its products to companies which would act as distribution partners.  Validata's purchasing account was assigned by Intermec to Avnet, a distributor based in Phoenix, Arizona.  Under this new distribution scheme, Validata dealt directly with Avnet, which in turn dealt with Intermec.  For various reasons, the transition cost Validata money in lost sales and delays in payment from its customers. From 2004 until the end of 2008, Avnet sold goods to Validata on credit terms evidenced by invoices.  From at least 2007 forward, Validata failed to pay these invoices according to their payment terms.

In 2007, Validata requested a "competitive price exception," which is similar to a discount, from Avnet for an Intermec mobile computer.  Avnet did not process Validata's request for over five months.  Validata claims this delay directly resulted in lost contracts

totaling almost $672,000.  Validata claims that the delay in processing the competitive price exception also caused an interruption in product flow by Avnet to Validata.

In 2008, Avnet requested another competitive price exception for later model Intermec products from Avnet.  This competitive price exception was not processed for three and a half months, which Avnet claims resulted in further loss of sales.  The lost contracts alleged by Validata are the basis of two of their counterclaims.

In the second quarter of 2008, Avnet credit personnel refused "flexible credit terms" to Validata which had been agreed to on many occasions in the past by both Intermec and Avnet.  Avnet eventually shut off product supply completely to Validata between May and August, 2008.

In September of 2008, Philips, president of Validata, signed a Promissory Note ("Note") and signed a guaranty ("Guaranty") that personally guaranteed Validata's account balances with Avnet.  The Note guaranteed payment of $149,071.01.  Under the terms of the Note, default on the note would occur if there was no payment of any principal or interest thereon within (5) days of when due, or upon default in payment under any other agreement between Validata and Avnet  which is not cured within any applicable time period.  *See* Defendant's Exhibit 1 to Doc. #34.  Avnet required the signing of this Note for resumption of product supply.  The note is governed by Arizona law.

Following execution of the Note and Guaranty, Avnet extended additional credit to Validata.  The goods were shipped under 45 day invoice terms.  After execution of the Note and Guaranty, Avnet shipped Validata $93,212.71 worth of goods, evidenced by 49 invoices ("Invoices").

Although Validata made payments on the Note, the payments were not timely.  Validata also exceeded the 45 day payment terms on the Invoices.  Avnet called the Note due in full in 2009.  Since the January 16, 2009 payment on the Note, no further payments have been made on the amounts owing on the Invoices or Note.

After the relationship with Avnet ended, Validata established a relationship with ScanSource, a different distributor of Intermec products, which relationship now also has terminated.

## IV. DISCUSSION

### A.  Avnet's claims against Validata

Avnet has brought claims against the Defendants for amounts due for breach of the Note and Guaranty, based on the failures to make timely payments as set forth in the amortization schedule attached to the Note, and to make timely payments on Invoices.

Production of a properly executed note, valid and unsatisfied on its face, makes a prima facie case of default.  *Davis v. Vergopia*, No. CA-CV 07-119,  2007 WL 5471736, *2 (Ariz. App. Nov. 20, 2007) (quoting *Glubauer v. Smith*, 458 P.2d 532, 535 (Ariz. App. 1969)).  Once the prima facie case is established, the party liable on the note must establish a defense.  *Id.*

Avnet has provided evidence, in the form of an affidavit from Avnet's Director of Finance, that Validata executed the Note in favor of Avnet, Avnet is the current holder of the Note, and the Note had not been paid according to its terms. *See* Lango Aff. at pages 3-4.  In response, Validata does not dispute that Philips, on behalf of Validata, signed and executed the Note, or that Philips signed the personal guaranty for the outstanding debt under the Note and Invoices, that Avnet is the holder of the Note, or that the Note is in default.  Validata and Philips

contend, however, that Validata signed the Note, and Philips signed the personal Guaranty, under duress, so that the Note and Guaranty cannot be enforced.

Avnet argues that Validata and Philips have failed to establish any factual grounds for duress, and have waived this defense. Also, Avnet argues that the defense has not been adequately pled.

A party claiming duress must show "(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." *Penick v. Most Worshipful Prince Hall Grand Lodge F & A M of Alabama, Inc.*, __ So. 3d__, 2010 WL 996538, at *12 (Ala. March 19, 2010);[1] *Edwards v. Kia Motors of Am., Inc.*, 486 F.3d 1229, 1235 (11th Cir. 2007).

Philips states in his affidavit that he had no reasonable alternative to signing the Guaranty since Avnet refused to resume product supply without it. Philips also states that Avnet represented that the Guaranty was just a formality and that Avnet would never use it against him. The Defendants contend that Avnet's conduct in minimizing the significance of the personal guarantee was wrongful, unlawful, and unconscionable.

Defendants correctly point out that duress is ordinarily a matter best left to the jury for resolution. It can, however, be decided on a motion for summary judgment. *See Edwards*, 486 F.3d at1235.

The Defendants have cited the court to Alabama cases which they contend support a finding of a question of fact as to economic duress in this case. Two of the cases relied upon by

---

[1] The parties agree that Alabama law applies to the issue of whether the Guaranty and Note were signed under duress.

the Defendants were decided with the "scintilla of the evidence" standard formerly used in Alabama, which does not apply in this case, because this court applies the Federal Rules of Civil Procedure.  *See Ralls v. First Fed. Sav. And Loan Ass'n*, 422 So. 2d 764 (Ala. 1982); *Day v. Ray E. Friedman & Co.*, 395 So. 2d 54 (Ala. 1981).  In addition, all three of the cases relied on involved unconscionable behavior by one contracting party, distinguishable from Avnet's lawful acts in this case. See *Newburn v. Dobbs Mobile Bay, Inc.*, 657 So. 2d 849 (Ala. 1995) (plaintiff had to sign a release in order to get his truck, the repairs for which were completed and for which no money was due); *Ray*, 395 So. 2d at 57 (plaintiff had to sign a note to obtain a release of his license to act as a broker).  The *Ralls* case appears to present an issue of fraud in the inducement, under the scintilla of evidence standard. 422 So. 2d at 766.

      The Alabama Supreme Court recently has decided a case similar to this one.  *See Wright Therapy Equip., LLC v. Blue Cross and Blue Shield*, 991 So. 2d 701 (Ala. 2008).  In *Wright Therapy*, Blue Cross informed Wright Therapy that it had overbilled Blue Cross and began withholding future payments to Wright Therapy pursuant to their agreement.  The two parties entered into a written agreement whereby Wright Therapy agreed to make monthly payments and Blue Cross agreed not to continue withholding payments.  Blue Cross then changed its fee schedule, and Wright Therapy had a diminished cash flow under the new schedule and made no further payments.  The Alabama Supreme Court determined that Blue Cross had the authority to withhold remittances under its contract, so that withholding was not a wrongful act. *Id.* at 707.  The court stated that the fact that "Wright Therapy may have executed the agreement out of financial necessity does not alone amount to economic duress." *Id.* at 707-08.  The court cited precedent for the proposition that unless "unlawful or unconscionable pressure is applied . . .

7

there is not economic compulsion amounting to duress." *Id.* (quoting *Int'l Paper Co. v. Whilden*, 469 So. 2d 560, 562 (Ala. 1985)); *see also Edwards*, 486 F.3d at 1236 (citing Alabama law for the proposition that economic duress requires "special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made").

In this case, there is no evidence before the court that Avnet's actions in stopping the delivery of equipment when Validata failed to pay its bills was anything but an authorized action. Further, Avnet was justified in enforcing the written terms of the agreement as to timeliness of payments. These actions, like those of Blue Cross in *Wright Therapy* in stopping payment, are not wrongful actions. "It is never duress to do that which a party has a legal right to do . . ." *Choksi v. Shah*, 8 So. 3d 288, 293-94 (Ala 2008) (citation omitted).

The Defendants have attempted to create a question of fact by pointing to representations allegedly made by Dan Gonzales, Avnet's Director of Credit, to Philips that the personal guaranty was "just a formality" that "would never be used against. . ." him. Philips' Aff. at ¶12. The Defendants also point to Philips' affidavit statement that he did not understand that Validata was going to be on a strict 45 day term for payment of new invoices. Philips Aff. at page 9.

The Defendants' argument appears to be akin to an argument that Philips was fraudulently induced to enter into the contract, similar to the *Ralls* case. Fraudulent inducement is evaluated by a reasonable reliance standard. *See Wright Therapy*, 991 So. 2d at 706. In *Wright Therapy*, the principal for Wright Therapy testified that she had hoped Blue Cross would revert to the way it had previously reimbursed payments, but there was no representation to that

effect.  Under the reasonable reliance standard, "a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract."  *Id.*

The Amortization Schedule attached to the Note in this case clearly sets out the dates on which payments are due. *See* Exhibit 1 to Doc. #34.  The Note itself provides that it is due upon default in the payment within five days of when due. *Id.*  The Note incorporates other agreements between the parties, *id.*, and the Invoices clearly state that they are due within 45 days.  *See* Exhibit 3 to Doc. #34.   Here, as in *Wright Therapy*, a party "hoping that [a relationship] would revert back," to the way it had been is not sufficient to establish fraudulent inducement.  *Id.* at 706-07.  This court cannot conclude, therefore, that there is a question of fact as to whether Avnet's actions constituted fraudulent inducement, or were otherwise unlawful or unconscionable.

In addition, it is apparently undisputed that there were other distributors of the computing devices from which the Defendants could have obtained the Intermec products they required. Philips has stated in an affidavit that he "believed that Avnet was our only practical source from which to obtain Intermec products, even though we were aware that there was one other distributor of Intermec products."  Philips Aff. at 5-6.  The third prong of the economic duress defense is, therefore, not met.  Accordingly, summary judgment is due to be GRANTED as to liability, and the court need not address Avnet's waiver and pleading arguments.  *See Edwards*, 486 F.3d at 1236-37 (stating that failure to demonstrate first and third prongs of the economic duress defense is fatal to the defense).

With respect to the amounts owed, Avnet has submitted an Affidavit by Thomas Lango ("Lango"), Director of Finance of Avnet, establishing the aggregate amount of debt owed by

Validata and Philips under the Note and Guaranty.  The amounts presently owing under the Note are as follows:  the current principal balance due is $105,572.83, with accrued and unpaid interest of $15,917.32 (as of March 19, 2010, with a per diem interest of $47.19 continuing to accrue thereafter), for a total due and owing of $121, 490.15 as of March 19, 2010, exclusive of costs of collection, including, but not limited to, attorneys' fees.

The debt outstanding under the Invoices is presently $93, 212.71.

Rule 56(e) of the Federal Rules of Civil Procedure "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.   Validata has not disputed the amounts owed, and the court sees no question of fact as to the amounts due under the Note and Guaranty.  *See U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).   Therefore, Amortization Schedule is entitled to summary judgment on Counts I, II, and III, in those amounts.

### B.  Avnet's Counterclaims

Avnet has also moved for summary judgment as to each of Validata's counterclaims.  The court will address each in turn.

#### 1. Count III–Violation of the Duty of Good Faith and Fair Dealing

Count III of the Amended Answer and Counterclaim is based on the same theory as the defense to Counts I-III of the Complaint.  That is, the Defendants allege that Avnet had an obligation of fair dealing and good faith in it relationship which was breached when Avnet called the Note.

Avnet argues that this claim is without merit because there is no genuine issue of material fact that the Note was in default at the time Avnet made demand and argues that there can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do, citing *Shoney's LLC v. MAC East, LLC*, 27 So. 3d 1216 (Ala. 2009).

The Defendants apparently do not dispute Avnet's legal analysis, arguing only that there is a genuine issue of material fact as to whether Avnet breached its obligation of good faith and fair dealing by forcing Philips to sign the promissory note and guaranty under duress and calling the note without it being in default under their prior course of dealing.  As stated above, the note provided for the terms of payment and default, and no question of fact has been raised to establish any wrongfulness in Avnet's actions in enforcing the written contract on its terms. *Cf. Anderson v. Preferred Stock Food Markets, Inc.,* 854 P.2d 1194, 1200 (Ariz. App. 1993) (applying rule regarding contracts generally to guaranty, that parol evidence can only be used if condition sought to be proved does not vary or contradict the terms of the written contract which is fully executed and unconditional on its face).  Therefore, summary judgment is due to be GRANTED as to Count III of the counterclaim for the same reasons that judgment is due as to Counts I and III of the Complaint.

2. Counts I and II based on competitive price exception requests

The Defendants have claimed in Counts I and II of the counterclaim that Avnet owes them the value of contracts which were lost because Avnet did not promptly process requests for competitive price exceptions.

Avnet has presented an affidavit of Lango in which he states that Avnet and Validata never exchanged an offer or acceptance regarding the competitive price exceptions alleged in the counterclaims, and that there was no assent by Avnet to processing competitive price exceptions in a timely manner. Lango Aff. at ¶24, 25. Avnet also argues that Defendants' counterclaims in Counts I and II regarding the alleged contracts to provide competitive price exceptions are without merit because Avnet could not have a contractual obligation to grant competitive price exceptions when it was Intermec which determined whether a particular request would be granted.

In response, Defendants argue that Avnet had a contractual obligation to Validata arising from their prior course of dealing and performance to process Validata's 2007 request for a competitive price exception on Intermec's model 700 product line in a timely manner. Validata improperly relies on the pleadings in support of it claim, which is insufficient to create a question of fact, and summary judgment would be due to be granted simply on that basis. *See Celotex*, 477 U.S. at 324. The court notes, however, that Philips' Affidavit tracks the language of the counterclaims referred to in Defendants' brief, so the court will consider the Affidavit to that extent. Although the Defendants base their theory on a prior course of dealing, the statement in Philips' Affidavit identifies a prior course of dealing as between Validata and Intermec, not Avnet. Philip's Aff. at ¶ 6.[2] There being no evidentiary basis from which to

---

[2] Philips states as follows:
In previous dealings with Intermec when Validata needed a price exception on an Intermec product so that Validata could submit a competitive bid . . . Intermec responded in a timely manner . . . .
Philip's Aff. at ¶6.

conclude that there was either a contractual obligation by Avnet, or a prior course of dealing between Avnet and Validata, regarding competitive price exceptions, the court concludes that Avnet is entitled to summary judgment on the counterclaims for breach of contract.

## V. CONCLUSION

For the reasons discussed, the court concludes that the Plaintiff's Motion for Summary Judgment is due to be and is hereby ORDERED GRANTED. A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 20th day of May, 2010.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE